DOROTHEA TOMPKINS v. LAURENCE TOMPKINS.[1]

January 20, 1939.

No. 31,909.

[1]Reported in 283 N. W. 485.

324

 

*A. V. Rieke, Bonita F. Rieke, Maurice H. Rieke,* and *Robert Beach Henton,* for appellant.

*Lauerman & Pfeiffer,* for respondent.

HOLT, JUSTICE.

Plaintiff seeks an absolute divorce on the ground of defendant's cruel and inhuman treatment of her. Defendant denies all of plaintiff's allegations; but admits that there have been quarrels at times, and avers that since the spring of 1937 he has abstained from the use of intoxicants.

The trial resulted in the findings referred to in the syllabus. A motion for amended findings or a new trial was denied. The appeal is from the judgment of dismissal on the merits.

The questions raised by the assignments of error are whether the findings referred to are sustained by sufficient evidence. The decisive finding is the one of which the substantial part is quoted in the first paragraph of the syllabus. It is well established that a continuous contemptuous treatment of a spouse may constitute cruel and inhuman treatment just as truly as physical violence. 2 Dunnell, Minn. Dig. (2 ed. & Supps.) § 2778 and cases cited in notes 87 and 88. And if the virtually uncorroborated testimony of plaintiff had been accepted as true by the trial court no doubt plaintiff would have prevailed. But a short reference to defendant's evidence will justify the findings made.

The parties married in June, 1925. He was then as now a rural mail carrier residing at Hector. She was the daughter of a farmer in Renville county. He was 46 and she 41 years at the time of trial. About three years after the marriage he began to use intoxicants to excess, but quit such use in the spring of 1937 and has not touched a drop since. A son was born to the parties April 1, 1927. During all their married life plaintiff concedes that, according to his means, defendant has provided well for the family; that he clothed her well; has not refused to secure for her whatever she requested;

and that there was no difference in his treatment whether under the influence of liquor or sober. They disposed of the original home and procured one with modern conveniences. Without complaint he provided the hospital and medical care for four major operations plaintiff underwent. Whenever the assistance of a maid was desired they would agree as to the person to be employed. Plaintiff claims only one instance of his laying a hand on her in anger, and that was in 1929, when the boy was 18 months old. She says he bent her against a pantry shelf and struck her about the buttocks so as to leave a black and blue mark. This he denies *in toto,* as well as the continuous cursing and calling her the vile names she testified to. The parties agree that on four occasions prior to the last plaintiff left the home and repaired to that of her parents, staying there for a short time. Plaintiff's mother was a witness for her, and it is significant that the mother brought her back to Hector three of the four times she returned. She was not at home the fourth time when defendant himself came to the farm and induced her to return. It is also noteworthy that the mother never heard of the cursing, vile names, or contemptuous treatments testified to by plaintiff, nor did she see the black and blue mark, or notice the wry neck when plaintiff went to the mother's home after the pantry incident. Plaintiff's counsel put this question to the mother: "Have you yourself at any time had any talk with Mr. Tompkins as to his behavior? A. No, I just told him once that they mustn't quarrel and he must behave. That is all the talk I ever had with him." The record shows that four of the maids who had worked for the parties testified, one for plaintiff and three for defendant. The one called by plaintiff was maid for seven months beginning January, 1936, and testified that she heard him swear, but never heard him refer to plaintiff in contemptuous terms except once, and that was not in plaintiff's presence. Of the three maids called by defendant, one, a sister of the maid called by plaintiff, worked for the parties two and one-half months in 1933, another who worked there nine months during 1933 and 1934, and still another who worked for them two and one-half months in 1935, and none of these had heard of any such conduct toward plaintiff as she testified defend-

ant was guilty of. Another person, not related to the parties, had rented a room in their home from the fall of 1933 to the fall of 1935 and testified he never heard or saw anything out of the way between husband and wife except one night after he had retired he heard a quarrel was going on between them but could not tell what it was about. In addition to these, defendant called Mr. Butler, an uncle by marriage, a deputy sheriff and marshal of Hector for years, who had often been in the home of the parties and who knew both well. He testified that at one time plaintiff came to him and requested that he see if he could prevail on defendant to stop drinking and that she said, "Outside of drinking he was an ideal husband and good provider." It may be added, as bearing on the question of defendant's treatment of plaintiff, that although they are not of the same religious faith, defendant has never raised any objection to plaintiff's attending her own church or sending the boy to its Sunday school. In view of the evidence above recited, it is idle to contend that the findings assailed are without adequate support.

The judgment is affirmed.

[1]Reported in 283 N. W. 483.